IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:        THE HONORABLE M. MILLER BAKER, JUDGE

| | |
|---|---|
| NORTH AMERICAN INTERPIPE, INC.,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES,<br><br>Defendant. | Court No. 20-03825 |

| | |
|---|---|
| EVRAZ INC NA. AND EVRAZ INC NA. CANADA,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES,<br><br>Defendant. | Court No. 20-03869 |

ALLEGHENY TECHNOLOGIES )
INCORPORATED and )
ALLEGHENY & TSINGSHAN )
STAINLESS, LLC, )
)
    Plaintiffs, )
)
    v. )   Court No. 20-03923
)
)
UNITED STATES, )
)
    Defendant. )
)

AM/NS CALVERT LLC, )
)
    Plaintiff, )
)
    v. )   Court No. 21-00005
)
UNITED STATES, )
)
    Defendant. )
)
)

|  |  |  |
|---|---|---|
| CALIFORNIA STEEL INDUSTRIES, INC., | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Court No. 21-00015 |
| UNITED STATES, | ) ) ) | |
| Defendant. | ) ) ) | |

|  |  |  |
|---|---|---|
| VALBRUNA SLATER STAINLESS, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Court No. 21-00027 |
| UNITED STATES, | ) ) ) | |
| Defendant. | ) ) | |

## DEFENDANT'S CONSOLIDATED REPLY TO PLAINTIFFS' RESPONSES IN OPPOSITION TO <u>DEFENDANT'S MOTION FOR VOLUNTARY REMAND</u>

BRIAN M. BOYNTON
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

                                        TARA K. HOGAN
                                        Assistant Director

OF COUNSEL:                             STEPHEN C. TOSINI
                                        MEEN GEU OH
Kimberly Hsu                            Senior Trial Counsel
Office of Chief Counsel for             JOSHUA E. KURLAND
Industry and Security                   ANN C. MOTTO
Department of Commerce                  KYLE S. BECKRICH
                                        Trial Attorneys
                                        Department of Justice
                                        Civil Division
                                        Commercial Litigation Branch
                                        P.O. Box 480, Ben Franklin Station
                                        Washington, D.C. 20044

September 7, 2021                       Attorneys for Defendant

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES.................................................................iii

GLOSSARY................................................................................ vi

ARGUMENT.............................................................................. 4

I.     Responses To The Issues Raised In The Court's August 17 Order......................................................................... 4

    A.     The Defendant Does Not Join In The Requests For Court-Annexed Mediation ........................................... 5

    B.     The Court Lacks The Power To Order Reliquidation Of Liquidated Entries In These Cases .............................. 6

    C.     The Defendant Is Not Opposed To Ensuring That There Is A Live Case Or Controversy Prior To The Court Resolving Our Pending Remand Requests....... 18

II.     Remand Is Warranted, Notwithstanding The Alleged Concerns Raised By Plaintiffs .......................................... 21

    A.     Remand Is Appropriate Prior To Briefing The Merits Of The Case............................................................... 22

    B.     Remand Will Resolve Any Issues Relating To *Ex Parte* Communications And The Completeness Of The Record ...................................................................... 25

    C.     Commerce Does Not Intend To Solicit New Information From The Parties And Intends That The Remand Procedure Be Governed By The Applicable Regulations ............................................................... 28

    D.     Commerce Will Afford The Parties The Opportunity To Resolve Issues Related To HTS Codes....................... 30

E.   The Length Of Time For The Proposed Remand Is Both Necessary And Appropriate......................................... 34

CONCLUSION........................................................................ 35

# TABLE OF AUTHORITIES

**Cases**                                                   **Page(s)**

*Am. Signature, Inc. v. United States,*
   598 F.3d 816 (Fed. Cir. 2010) ........................................................... 11

*Bender v. Williamsport Area Sch. Dist.,*
   475 U.S. 534 (1986) .................................................................. 20-21

*Citizens Against Pellissippi Parkway Extension, Inc. v. Mineta,*
   375 F.3d 412 (6th Cir. 2004) ................................................. 27-28, 31

*County of Los Angeles v. Shalala,*
   192 F.3d 1005 (D.C. Cir. 1999) ....................................................... 14

*CSC Sugar LLC v. United States,*
   461 F. Supp. 3d 1352 (Ct. Int'l Trade 2020) .................................... 26

*CSC Sugar LLC v. United States,*
   2021 U.S. App. LEXIS 21223 (Fed. Cir. July 19, 2021) .................... 26

*Ethyl Corp. v. Browner,*
   989 F.2d 522 (D.C. Cir. 1993) ........................................................ 23

*Fengchi Imp. & Exp. Co. v. United States,*
   98 F. Supp. 3d 1309 (Ct. Int'l Trade 2015) ...................................... 33

*Fla Power & Light Co. v. Lorion,*
   470 U.S. 729 (1984) ................................................................. 14, 22

*Hung Vuong Corp. v. United States,*
   483 F Supp. 3d 1321 (Ct. Int'l Trade 2020) ......................... 26, 27, 28

*JSW Steel, Inc. v. United States,*
   466 F. Supp. 3d 1320 (Ct. Int'l Trade 2020) ......................... 24, 25, 31

*Knox v. Serv. Employees,*
   567 U.S. 298 (2012) ........................................................................ 19

*Lujan v. Nat'l Wildlife Fed'n,*
   497 U.S. 871 (1990) ........................................................................ 23

*Nippon Steel Corp. v. United States*,
219 F.3d 1348 (Fed. Cir. 2000) ........................................................ 32

*NTN Bearing Corp. of Am. v. United States*,
132 F. Supp. 2d 1102 (Ct. Int'l Trade 2001) .................................... 29

*Palisades Gen. Hosp., Inc. v. Leavitt*,
426 F.3d 400 (D.C. Cir. 2005) .......................................................... 15

*PATCO v. Fed. Labor Relations Auth.*,
685 F.2d 547 (D.C. Cir. 1982) .......................................................... 26

*Shakeproof Assembly Components Div. of Ill. Tool Works, Inc. v. United States*,
412 F. Supp. 2d 1330 (Ct. Int'l Trade 2005) .................................... 21

*Shinyei Corp. of Am. v. United States*,
355 F.3d 1297 (Fed. Cir. 2004) ........................................................ 10

*SKF USA Inc. v. United States*,
254 F.3d 1022 (Fed. Cir. 2001) ................................................... 23, 25

*Zenith Radio Corp. v. United States*,
710 F.2d 806 (Fed. Cir. 1983) ................................................... 8, 9, 11

*Sumecht NA, Inc. v. United States*,
923 F.3d 1340 (Fed. Cir. 2019) ........................................................ 11

*Ugine and Alz Belgium v. United States*,
452 F.3d 1289 (Fed. Cir. 2006) ........................................................ 11

**Statutes**

5 U.S.C. § 704 .................................................................................... 13

5 U.S.C. § 706 .................................................................................... 13

19 U.S.C. § 1504 .................................................................................. 7

19 U.S.C. § 1500 .................................................................................. 7

19 U.S.C. § 1505 .................................................................................. 7

19 U.S.C. § 1514 .............................................................................. 7, 8

19 U.S.C. § 1516a ........................................................................ 9

19 U.S.C. § 1675 ........................................................................ 10

28 U.S.C. § 1581 ................................................................... 8, 13

28 U.S.C. § 2636 ........................................................................ 8

28 U.S.C. § 2640 ..................................................................... 13

## Rules

USCIT Rule 7 ............................................................................. 3

USCIT Rule 16.1 ....................................................................... 5

## Other

15 C.F.R. Pt. 705 ......................................................... 15, 16, 17

15 C.F.R. pt. 705 .................................................................... 29

19 C.F.R. § 159.1 ...................................................................... 7

v

# **<u>GLOSSARY</u>**

NAI: North American Interpipe, Inc.

CSI: California Steel Industries, Inc.

CBP: United States Customs and Border Protection

HTSUS: Harmonized Tariff Schedule of the United States

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:        THE HONORABLE M. MILLER BAKER, JUDGE

| | | |
|---|---|---|
| NORTH AMERICAN INTERPIPE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Court No. 20-03825 |
| | ) | |
| UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

| | | |
|---|---|---|
| EVRAZ INC NA. AND EVRAZ INC NA. CANADA, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Court No. 20-03869 |
| | ) | |
| UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

ALLEGHENY TECHNOLOGIES
INCORPORATED and
ALLEGHENY & TSINGSHAN
STAINLESS, LLC,

    Plaintiffs,

    v.

UNITED STATES,

    Defendant.

Court No. 20-03923

AM/NS CALVERT LLC,

    Plaintiff,

    v.

UNITED STATES,

    Defendant.

Court No. 21-00005

2

```
———————————————————
                           )
CALIFORNIA STEEL          )
INDUSTRIES, INC.,         )
                           )
        Plaintiff,         )
                           )
        v.                 )        Court No. 21-00015
                           )
UNITED STATES,            )
                           )
        Defendant.         )
                           )
————————————————————)
```

```
———————————————————
                                )
VALBRUNA SLATER STAINLESS,      )
INC.,                           )
                                )
        Plaintiff,              )
                                )
        v.                      )    Court No. 21-00027
                                )
UNITED STATES,                 )
                                )
        Defendant.              )
                                )
———————————————————
```

## DEFENDANT'S CONSOLIDATED REPLY TO PLAINTIFFS' RESPONSES IN OPPOSITION TO DEFENDANT'S MOTION FOR VOLUNTARY REMAND

Pursuant to the Court's August 17, 2021 order and Rule 7(d) of the

Rules of this Court, defendant, the United States, respectfully submits

this consolidated reply for each of the above-captioned cases. In this

reply, we address each issue raised by the Court in its August 17 order, as well as the issues raised by the plaintiffs in their responses to our motions to remand.[1]

## ARGUMENT

I.     Responses To The Issues Raised In The Court's August 17 Order

In its August 17 order, the Court directed that we address, at a minimum: (1) our position on the request for court-annexed mediation; (2) our unequivocal position as to whether the Court lacks the power to grant relief as to liquidated entries; and (3) our position as to why voluntary remand is appropriate as to liquidated entries, if in fact we contend that the Court lacks power to grant relief as to those entries. We address each of those issues below.

---

[1]  Unless otherwise specified, we reply to the arguments made in the three response briefs, collectively.  When referring to arguments particular to one response brief, we cite to the response brief of North American Interpipe, Inc. (NAI), Evraz Inc. NA, and Valbruna Slater Stainless, Inc. (Valbruna) as NAI, Evraz, Valbruna Resp., the response brief of AM/NS Calvert LLC as Calvert Resp., and the response brief of California Steel Industries, Inc. (CSI) and Allegheny Technologies Inc. as CSI, Allegheny Resp.

4

A.    The Defendant Does Not Join In The Requests For Court-
      Annexed Mediation

In plaintiff's response brief in *AM / NS Calvert LLC v. United
States*, No. 21-00005 (Ct. Int'l Trade), AM/NS Calvert requested that
the Court order court-annexed mediation pursuant to Rule 16.1 of this
Court's rules.  Calvert Resp. at 33-34.  On August 27, 2021, the
remaining five plaintiffs joined in AM/NS Calvert's request.  After
evaluating whether mediation is appropriate, we have decided to not
join in the requests.

Although most plaintiffs have not shared with us what outcome
they hope to achieve through mediation, it is our understanding that at
least some importers desire a monetary payment in lieu of a granted
exclusion.  Mediation would be unwieldy, given the high number of
exclusions at issue in these six cases, each of which has a unique factual
administrative record.  Further, even if plaintiffs intend to use
mediation to narrow the issues presented or reach agreement upon
remand procedures, we believe that these cases present important legal

issues that warrant resolution through court proceedings that are transparent and public.

Should the Court refer these matters for mediation, however, we will participate in good faith.

### B.   The Court Lacks The Power To Order Reliquidation Of Liquidated Entries In These Cases

In light of the concern raised by the plaintiffs about the United States taking a position that the remedy of a refund of duties for entries that have already liquidated may not be available in these cases, the Court ordered that we provide an "unequivocal position as to whether the court lacks the power to grant relief as to liquidated entries."

As we set forth in litigation related to the Section 301 trade program, *see In re Section 301 Cases*, No. 21-00052 (Ct. Int'l Trade), our position is that the remedy of reliquidation is not available in these case under the relevant statutory framework.

When goods are imported into the United States, U.S. Customs and Border Protection (CBP) is obligated to "fix the final amount of duty to be paid on such merchandise and determine any increased or additional duties, taxes, and fees due[.]"  19 U.S.C. § 1500(c).  CBP calculates the "final computation or ascertainment of duties" through a

6

process called "liquidation." *See* 19 U.S.C. § 1500(d) (requiring that CBP "liquidate the entry" in accordance with regulations); 19 C.F.R. § 159.1 (defining "liquidation as "the final computation or ascertainment of duties on entries for consumption or drawback entries."). Unless liquidation is extended under 19 U.S.C. § 1505(b), or suspended pursuant to statute or court order, CBP is generally required to liquidate within one year of the date of the entry. *See* 19 U.S.C. § 1504(a)(1). To the extent CBP errs in its computation or ascertainment of duties, Congress provided a remedy. Specifically, importers may file an administrative protest within 180 days of the liquidation. 19 U.S.C. § 1514(c)(3). Section 1514(a) broadly describes the types of matters that may be protested, but once an entry has liquidated, the statute provides that it

> **shall be final and conclusive** upon all persons (including the United States and any officer thereof) unless a protest is filed in accordance with this section, or unless a civil action contesting the denial of a protest, in whole or in part, is commenced in the United States Court of International Trade in accordance with chapter 169 of title 28 within the time prescribed by section 2636 of that title.

*See* 19 U.S.C. § 1514(a) (emphasis added).  If CBP agrees with the importer, CBP will correct the error by granting the protest and reliquidating the entry.

If CBP denies the protest, in whole or in part, an importer may commence a civil action within 180 days from the mailing of the notice of the denial.  28 U.S.C. § 2636(a)(1).  If the importer prevails in its challenge, the trial court has the authority to correct any errors by ordering, in part, the reliquidation of entries.  If, however, an importer does nothing to challenge a liquidation, it becomes "final and conclusive" 180 days from the date of liquidation.  19 U.S.C. § 1514(a).  Once a liquidation becomes final and conclusive, generally neither CBP nor the Courts may alter or set aside the transaction, including the assessment of duties.

Federal Circuit authority demonstrates that the rule of finality of liquidations is not limited to Customs decisions that can be protested pursuant to 19 U.S.C. § 1514(a).  Specifically, in *Zenith Radio Corp. v. United States*, 710 F.2d 806 (Fed. Cir. 1983), the Federal Circuit analyzed the availability of reliquidation in an action brought pursuant to 28 U.S.C. § 1581(c) to challenge a determination by Commerce.  The

8

Court found that 19 U.S.C. § 1516a, the statute governing judicial review in countervailing duty and antidumping duty proceedings, authorizes it "to enjoin liquidation of entries pending the court's decision." *Zenith*, 710 F.2d at 811 (citing 19 U.S.C. § 1516a(c)(2)). However, "[t]he statutory scheme has no provision permitting reliquidation in this case or imposition of higher dumping duties after liquidation." *Id.* at 810.  Thus, "[o]nce liquidation occurs, a subsequent decision by the trial court on the merits of [a claimant's] challenge can have no effect on the dumping duties assessed on entries . . . ." *Id.* *Zenith* shows that, in the absence of an injunction enjoining liquidation, an entry will liquidate in the normal administrative course and that liquidation will become final and conclusive.  Moreover, since *Zenith* involved an action brought pursuant to section 1581(c), its holding demonstrates that the rule of finality is not limited to liquidations that are protestable in accordance with section 1581(a).  If reliquidation is not available upon a successful challenge under section 1581(c), *Zenith* indicates that reliquidation should not be available upon a successful challenge under section 1581(i) either.

9

Nevertheless, the Court in *Shinyei Corp. of Am. v. United States*, 355 F.3d 1297 (Fed. Cir. 2004) rejected the Government's reliance on the rule of finality, as applied to actions brought under section 1581(i) and the Administrative Procedure Act (APA) alleging a violation of 19 U.S.C. § 1675(a)(2)(C).  In *Shinyei*, CBP liquidated entries in violation of a final court judgment, based upon inadvertently erroneous instructions from Commerce.  The Court explained that section 1514(a) "is fairly construed to prohibit a challenge to 'decisions' of the Customs Service 'as to' liquidation outside the protest provisions of section 1514(a)." *Shinyei*, 355 F.3d at 1311.  "It is not, however, fairly construed to prohibit reliquidation in all cases, particularly when the alleged error is with Commerce instructions . . . , not 'decisions of the Customs Service' as to liquidation." *Id.*

We have recognized that *Shinyei* is binding precedent, and therefore, we have relied on its holding in defending against certain requests to suspend the liquidation of entries.  However, as explained in the Section 301 litigation, we have recently taken a close look at the

holding in *Shinyei* and the Federal Circuit's subsequent decisions,[2]

particularly in light of *Shinyei's* apparent conflict with *Zenith*.  In light

of these cases, the relief in *Shinyei* could be seen as necessary to protect

a judgment of this Court, rather than authority for reliquidation as a

garden variety remedy in any case brought pursuant to section 1581(i).

Regardless, it is our position that reliquidation is generally not

available as a remedy under the relevant statutory framework, and that

*Shinyei* conflicts with the Federal Circuit's holding in *Zenith*.  *See*

*Zenith*, 710 F.2d at 810 (in the absence of a statutory provision

permitting reliquidation, "[o]nce liquidation occurs, a subsequent

decision by the trial court on the merits of [a claimant's] challenge can

have no effect on the dumping duties assessed on entries . . . .").

Fundamentally, however, the Court need not necessarily resolve

the full extent of its power to order reliquidation in deciding our

motions for remand.  Even assuming that the Court's powers extend to

---

[2] In particular, at least three Federal Circuit decisions cast
uncertainty as to the applicability of *Shinyei* beyond the specific facts of
that case: *Ugine and Alz Belgium v. United States*, 452 F.3d 1289 (Fed.
Cir. 2006); *Am. Signature, Inc. v. United States*, 598 F.3d 816 (Fed. Cir.
2010); and *Sumecht NA, Inc. v. United States*, 923 F.3d 1340 (Fed. Cir.
2019).

ordering reliquidation in section 1581(i) cases, reliquidation of liquidated entries is not the appropriate or available remedy in *these* cases, for at least two reasons.

First, when delegating authority to Commerce to grant exclusions for Section 232 tariffs, the President did not contemplate that exclusions would apply to liquidated entries of merchandise. On August 29, 2018, the President clarified that granted exclusions would apply only to those entries for which liquidation is not final. The President amended Proclamation 9705, clause 3 (as amended by Proclamation 9711) with the following:

> If the Secretary determines that a particular steel article should be excluded, the Secretary shall publicly post such determination and notify U.S. Customs and Border Protection (CBP) of the Department of Homeland Security concerning such article so that it will be excluded from the duties described in clause 2 of this proclamation. For merchandise entered for consumption, or withdrawn from warehouse for consumption, on or after the date the duty established under this proclamation is effective and **with respect to which liquidation is not final**, such relief shall be retroactive to the date the request for relief was accepted by the Department of Commerce.

*Proclamation 9777, Adjusting Imports of Steel Into the United States*, 83 Fed. Reg. 45,025 (Aug. 29, 2018) (Proclamation 9777) (emphasis added). Thus, ordering reliquidation to apply a granted exclusion to an already-

liquidated entry would run counter to the scope of the President's proclamation authorizing exclusions from the tariffs. It would be incongruous for some importers to be able to apply their exclusions to entries that they previously allowed to liquidate simply because they obtained their exclusion following judicial review.

Second, and perhaps most fundamentally, reliquidation as a remedy is inconsistent with the type of challenge that the plaintiffs have brought. Plaintiffs have asserted claims based upon the APA, resting upon this Court's 28 U.S.C. § 1581(i) jurisdiction, challenging the Department of Commerce's decisions to deny exclusion requests. Thus, the "final agency action," 5 U.S.C. § 704, is Commerce's exclusion denials. When agency action is challenged, the Court may "set aside agency action . . . [that is] arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 28 U.S.C. § 2640(e) (incorporating the standard of review set forth in 5 U.S.C. § 706).

Congress ensured that the Court of International Trade possesses authority in appropriate contexts to provide any remedy that a district court could provide. But Congress also limited the use of particular remedies in specific categories of cases. As relevant here, Congress

limited the relief available when the Court exercises jurisdiction under section 1581(i) to the types of relief available under the APA.

When the Court finds that agency action does not comport with law, the "normal remedy" is to "set aside" the final agency action being challenged and to remand to the agency so that it may proceed to act in compliance with law. *See County of Los Angeles v. Shalala*, 192 F.3d 1005, 1011 (D.C. Cir. 1999) ("[W]hen a court reviewing agency action determines that an agency made an error of law, the court's inquiry is at an end: the case must be remanded to the agency for further action consistent with the corrected legal standards." (internal quotation omitted)); *see generally Fla Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1984).

If the Court finds that remand redetermination is not arbitrary, capricious, or not in accordance with law, it will sustain that redetermination and enter judgment. Thus, should Commerce grant an exclusion (either as a result of a determination made after voluntary remand or in compliance with a court order), the result is a revised agency action: the grant of an exclusion. Either way, the Court's role is at an end in this matter once it determines that the agency action

14

comports with the APA's standard of review. *See Palisades Gen. Hosp., Inc. v. Leavitt*, 426 F.3d 400, 403 (D.C. Cir. 2005) (rejecting availability of "make-whole" relief in an APA challenge).

Moreover, obtaining an exclusion does not automatically result in a refund of duties previously paid. A brief summary of the exclusion process demonstrates this point. Once Commerce approves an exclusion, it assigns the approved exclusion a product exclusion number. That exclusion will be effective five business days after the posting of the grant of the exclusion. 15 C.F.R. Pt. 705, Supp. 1 at (f)(2). On that date, the requester will be able "to rely" upon the approved exclusion request. *Id*. Exclusions are generally approved for one year from the date Commerce accepted the request. *Id.*

Importers are required to "provide any information that may be required, and in such form, as is deemed necessary by CBP in order to permit the administration of" exclusions. Proclamation 9705, Annex (U.S. Note 16(d)). The importer must then provide certain required information to CBP. Specifically, it must submit the company's name, address and importer of record number, and the associated product exclusion number, to a certain email address. *See U.S. Customs and*

*Border Protection, Cargo Systems Messaging Service, CSMS #18-000378 – UPDATE: Submitting Imports of Products Excluded from Duties on Imports of Steel or Aluminum* (June 12, 2018).

That information must be provided to CBP before the importer files entries using the exclusion number "in order to activate the approved product exclusion number in the Automated Commercial Environment (ACE)." CSMS No. 39633923. If an importer requests an administrative refund for previous imports of duty-excluded products granted by Commerce, CBP directs that "importers may file a Post Summary Correction (PSC) and provide the product exclusion number in the Importer Additional Declaration Field. If the entry has already liquidated, importers may protest the liquidation" if the time for filing such a protest has not expired. *Id.* Once an importer has associated entries with a product exclusion number, CBP must still evaluate whether the specific entered merchandise is covered by the particular exclusion that was determined and announced by Commerce. Specifically, CBP must evaluate whether the entered the merchandise is precisely the same as the merchandise that is described in the exclusion that Commerce determined and announced.

16

Commerce has no role in determining when an exclusion applies in the assessment, collection, or refund of duties to particular entries. That role belongs to CBP. Thus, reliquidation of specific entries does not result from Commerce's action of approving or denying an exclusion, but rather from CBP's subsequent decision with respect to the application of the exclusion to the merchandise in the entries.

The relevant regulation covering exclusion requests confirms that CBP, not Commerce, is responsible for refunding duties: "The U.S. Department of Commerce does not provide refunds on tariffs. Any questions on the refund of duties should be directed to CBP." 15 C.F.R. Pt. 705 Supp. 1(h)(2)(iii)(B) (effective Sept. 11, 2018).

This point was underscored in a recent decision by another judge of this Court. *See Voestalpine USA Corp. v. United States*, No. 20-03829, slip. op. at 25 (Ct. Int'l Trade Aug. 26, 2021). In *Voestalpine*, another case challenging a Section 232 exclusion decision, the Court held that whether reliquidation is available is a case-specific determination. *Id.* In that case, Commerce had corrected what plaintiffs characterized as an invalid exclusion. Nonetheless, the plaintiffs sought an order reliquidating entries. Because Commerce had

17

given plaintiffs all the relief that Commerce could give under its authority, the Court dismissed the case as moot. The Court held that the plaintiffs did not show that, even if reliquidation is within the Court's authority to order, it was an appropriate remedy in this case. So too here, consistent with *Voestalpine*, reliquidation of liquidated entries is not an appropriate remedy if plaintiffs prevail on the merits and Commerce grants an exclusion. *See id.*

C.     The Defendant Is Not Opposed To Ensuring That There Is A Live Case Or Controversy Prior To The Court Resolving Our Pending Remand Requests

Each plaintiff contends that the Court should not remand their case back to Commerce until the issue related to the Court's power to grant relief as to liquidated entries is resolved. The Court ordered the Government to respond to this argument in our reply and explain why remand is appropriate if our position is that the Court cannot grant relief as to the liquidated entries.

As a preliminary matter, the Court may never be required to address this issue of the availability of reliquidation, because it may only be relevant if the Court ultimately rules against the government on the merits.

18

Mootness occurs "when it is impossible for a court to grant any effectual relief whatsoever to the prevailing party." *Knox v. Serv. Employees*, 567 U.S. 298, 307 (2012) (internal quotations omitted). To our knowledge, no plaintiff has taken the position that *all* of its requested relief would be denied if the Government prevails on this issue.  Each plaintiff's prayer for relief includes a request for a finding that Commerce acted contrary to law and an order directing Commerce to grant the challenged exclusion.  This Court may still order Commerce's exclusion decisions to be set aside, or could sustain the grant of an exclusion on remand.  Indeed, that is the scope of the remedy available.  Such relief – a granted exclusion – would substantively change the legal relationship between the requestors and Commerce.

Further, only CSI and AM/NS Calvert have asserted that all of their entries that would be potentially covered by a granted exclusion have liquidated.  CSI, Allegheny Resp. at 13; Calvert Resp. at 8.  To be clear, the defendant does not possess the information to know whether any particular plaintiff has any entries that would be covered by a granted exclusion, or the liquidation status of those entries.  That is

19

because, as we explained above, there are still additional steps that an importer must take to apply an exclusion to any particular unliquidated entry, and CBP would still need to examine each identified entry to ensure that the claimed exclusion applies. At this point, we must rely upon the importers' representations about the entries it would seek to apply exclusions against and the liquidation status of those entries.

We acknowledge, however, that we are not aware of what real-world value or practical benefit a plaintiff might derive from a granted exclusion, in the absence of any unliquidated entries that an importer could seek to apply the exclusion against. Indeed, AM/NS Calvert comes the closest to conceding that its case would likely be moot if reliquidation is not available. Calvert Resp. at 13. Insofar as there is at least one unliquidated entry that an importer could seek to apply a granted exclusion for, however, there is still practical relief that the court's decision could offer, even under plaintiffs' theory.

Nonetheless, at least some plaintiffs appear to have called this Court's jurisdiction into question by conceding that liquidation may have rendered their claims moot. This Court must assure itself of jurisdiction over these cases. *See Bender v. Williamsport Area Sch.*

20

*Dist.*, 475 U.S. 534, 541 (1986).  Further, the plaintiffs' identification of the unliquidated entries against which it would seek to apply an exclusion to could significantly narrow our proposed remand, which would save the limited resources of the parties and the Court.  We, therefore, do not oppose the Court ensuring that there is a live case or controversy prior to resolution of our pending motions, so that remand would still promote final resolution of these cases.  *See Shakeproof Assembly Components Div. of Ill. Tool Works, Inc. v. United States*, 412 F. Supp. 2d 1330, 1337 (Ct. Int'l Trade 2005).

II.    Remand Is Warranted, Notwithstanding The Alleged Concerns Raised By Plaintiffs

Plaintiffs, collectively, raise several arguments in opposition to remand or, more commonly, in opposition to the scope of Commerce's proposed remand.  Those arguments include that:  (1) the requested remand should be denied in order to allow the parties to brief the claims first; (2) the proposed remand does not resolve the issues raised by plaintiffs related to *ex parte* communications; (3) the scope of the remand is too broad because it would allow Commerce to review "any other information that the decision-maker considers, which will be documented in the record"; (4) Commerce should explain how it will

21

resolve the administrability issues related Harmonized Tariff Schedule (HTS) codes; and (5) the length of time for remand should be shortened. We address each concern below.

### A.   Remand Is Appropriate Prior To Briefing The Merits Of The Case

Two sets of plaintiffs, AM/NS Calvert and NAI, Evraz, and Valbruna, argue that the Court should deny the remand motion because the Court should address the merits of the case prior to issuing a remand.

This demand to brief the merits, notwithstanding Commerce's offer to reconsider the exclusion decisions, is unreasonable and fails to account for this Court's limited review role.  As we previously explained, "{if} the record before the agency does not support the agency action, if the agency has not considered all relevant factors, or if the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Fla Light & Power*, 470 U.S. at 743-44.  Our proposed remand, therefore, would provide the plaintiffs with the same relief that they would be entitled to, were the court to entertain motions for judgment

on the administrative record.  The court's role does not extend entertaining the plaintiffs' broader programmatic critiques of the agency.  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 891 (1990). Moreover, the plaintiffs fail to recognize that one benefit to an early voluntary remand is to allow the agency to address alleged errors and potential mistakes "rather than wasting the courts' and the parties' resources reviewing a record that" Commerce has acknowledged may be "incorrect or incomplete." *Ethyl Corp. v. Browner*, 989 F.2d 522, 524 (D.C. Cir. 1993).

This argument further disregards the standard the Court uses when deciding remand motions.  "When an agency action is reviewed by the courts, . . . the agency may request a remand, without confessing error, to reconsider its previous position." *SKF USA Inc. v. United States*, 254 F.3d 1022, 1029 (Fed. Cir. 2001).  Indeed, under the circumstances here, which involve weighing multiple interests and evidence from disparate sources, "a remand to the agency is required, absent the most unusual circumstances verging on bad faith." *Id.* at 1029-30.  This case does not present unusual circumstances justifying the denial of remand.

As we explained in our motion for remand, Commerce acknowledges that another judge of this Court, in *JSW Steel, Inc. v. United States*, found that Commerce's denials of the exclusion requests at issue in that case were "devoid of explanation and frustrate judicial review." 466 F. Supp. 3d 1320, 1330 (Ct. Int'l Trade 2020). Based on its review of the decision memoranda and underlying recommendations in this case, which are similar in reasoning and scope of analysis as those reviewed in *JSW*, Commerce wishes to reconsider the exclusions and to provide additional reasoning or explanation, as necessary. Now plaintiffs argue that *JSW* does not provide a compelling justification for remand.[3] However, this Court has acknowledged that remand is appropriate in light of another decision of this Court involving similar issues. *See, e.g.*, *MCC Holdings v. United States*, No. 18-00248, ECF No. 33 at 2 (Ct. Int'l Trade Jan. 7, 2020) (granting remand when "Commerce employed a similar analysis in reaching the decision contested" as it did in another case already reviewed by the Court).

---

[3] AM/NS Calvert, NAI, Evraz, and Valbruna take the interesting position that *JSW* does not provide a compelling reason to justify remand, but that the same opinion and order justifies referral to court-annexed mediation.

Plaintiffs also argue that by considering the merits, the Court will be able to provide specific remand instructions as it did in *JSW*. *See* Calvert Resp. at 21; NAI, Evraz, Valbruna Resp. at 19. But the remand instructions proposed in our motion align with the remand instructions in *JSW* related to the merits of the case, which stated that Commerce was to "fully reconsider or provide further explanation of its denials of all of JSW's exclusion requests, consistent with this opinion and in light of the complete administrative record." *JSW*, 466 F. Supp. 3d at 1333. This Court's decision in *JSW*, along with the alleged administrative record discussed below, provide a sufficient basis to remand this case to Commerce. Because the plaintiffs fail to show how our request for voluntary remand prior to briefing constitutes "the most unusual circumstances verging on bad faith," remand should be granted. *SKF*, 254 F.3d at 1029-30.

B.    Remand Will Resolve Any Issues Relating To *Ex Parte* Communications And The Completeness Of The Record

Contrary to the concerns raised by plaintiffs, the proposed remands resolve the issues relating to the administrative record and *ex parte* communications. Primarily, the plaintiffs assert that the remand can only be "new and independent" if new decision-makers are in place,

25

and if those new decision-makers have no connection to any prior *ex parte* communications.

Commerce has yet to reach a decision as to whether it will assign these matters to a new decision-maker on remand. But plaintiffs are incorrect that a new decision-maker must be in place for the agency to reach a new determination based on the administrative record. Indeed, decision-makers are "capable of ignoring considerations not on the record." *See Hung Vuong Corp. v. United States*, 483 F Supp. 3d 1321, 1344 (Ct. Int'l Trade 2020) (quoting *PATCO v. Fed. Labor Relations Auth.*, 685 F.2d 547, 573 (D.C. Cir. 1982)).

That principle was most recently demonstrated in *CSC Sugar LLC v. United States*, 461 F. Supp. 3d 1352 (Ct. Int'l Trade 2020), *affirmed without opinion by CSC Sugar LLC v. United States*, 2021 U.S. App. LEXIS 21223 (Fed. Cir. July 19, 2021). There, the Court vacated a suspension agreement because Commerce had failed to document certain *ex parte* communications, as required by statute. *Id.* at 1354. Commerce subsequently conducted a new proceeding, relying upon many of the same documents as in the original proceeding. *Id.* at 1357. The Court nonetheless rejected the plaintiffs' arguments that

26

Commerce implicitly relied upon the previous *ex parte* communications or had failed to conduct a new proceeding and declined to impute the earlier procedural deficiencies to the new proceeding.

Plaintiffs do not go as far to assert that the decision-maker in these cases is biased or irreversibly tainted by *ex parte* influences.  Nor could they without bringing outright allegations of bad faith.  *Hung Vuong Corp.*, 483 F Supp. 3d at 1344.  Absent substantiation of allegations of bias or bad faith, Commerce officials are entitled to the presumption that they will act in good faith in carrying out the proposed remands and only consider information contained within the administrative record.  *See id.* at 1344-45.

Notably, NAI, Evraz, and Valbruna go one step further.  They argue that remand should not be permitted at all due to the *ex parte* communications.  NAI, Evraz, and Valbruna Resp. at 13-16.  This argument holds no water.  These plaintiffs allege that Commerce erred by directly or indirectly considering the *ex parte* communications when deciding the exclusion requests at issue.  Now they take the position that the Court should *not* allow Commerce to correct the alleged error.  Such a position is unreasonable on its face and contrary to the law.  *See*

27

*Citizens Against Pellissippi Parkway Extension, Inc. v. Mineta*, 375 F.3d 412, 416 (6th Cir. 2004) (finding that the district court abused its discretion in denying voluntary remand that would have "cure[d] the very legal defects asserted by plaintiffs challenging federal action."). Absent a showing of bad faith by clear and convincing evidence, and the plaintiffs do not even allege bad faith here, Commerce officials are entitled to the presumption that they "act in good faith" and are "capable of ignoring considerations not in the record." *Hung Vuong Corp.*, 483 F. Supp. 3d at 1344. Accordingly, the proposed remand will resolve any issues related to the failure to document *ex parte* communications. Resolving these issues is a compelling reason to remand the case.

C.     Commerce Does Not Intend To Solicit New Information
       From The Parties And Intends That The Remand Procedure
       Be Governed By The Applicable Regulations

In their responses, each plaintiff raises concerns about the proposed scope of the remand based on the statement in our remand motion that Commerce will review "a record limited to: (1) the original exclusion request; (2) the parties' original objection, rebuttals and sur-rebuttals, and (3) any other information that the decision-maker

28

considers, which will be documented in the record." Particularly, plaintiffs challenge the third item, arguing that third category allows Commerce to solicit and consider any new factual information that it desires.

To be clear, Commerce's regulations do not prohibit it from seeking clarifying or additional information from parties and do not address how Commerce may conduct a remand proceeding. *Cf. NTN Bearing Corp. of Am. v. United States*, 132 F. Supp. 2d 1102, 1107 (Ct. Int'l Trade 2001) (explaining that as long as the Court does not forbid Commerce from considering new information on remand, it remains within Commerce's discretion to request and evaluate new data).

But in any event, to avoid any ambiguity, if remand is granted, Commerce does not intend to solicit new information from the parties. Instead, Commerce plans to reconsider the exclusion requests by conducting a new review of the original submissions in accordance with the regulations governing consideration of exclusion requests. *See* 15 C.F.R. pt. 705 supp. 1 (setting forth the submissions considered by Commerce in deciding an exclusion request).

29

The contested language cited by the plaintiffs was intended to address the situation in which Commerce, on remand, may take into consideration information beyond the parties' original submissions (*i.e.*, an ITA recommendation, government publications, industry standards, etc.) or clarify any information already on the record. *If* Commerce does so, it is merely committing to documenting anything considered and including it in the record, as would be required. Accordingly, any concern by the plaintiffs that the remand would be "unbounded" or even beyond the parameters of the applicable regulations is unfounded.

D.   Commerce Will Afford The Parties The Opportunity To Resolve Issues Related To HTS Codes

The plaintiffs take differing positions with respect to the issue of correcting the administrability issues related to HTS codes found in many of the exclusion denials at issue in these cases. On the one hand, AM/NS Calvert, CSI, and Allegheny argue that all parties with exclusion requests denied on the basis of administrability issues should be allowed to correct such issues and that Commerce should provide guidance on how those issues will be resolved. NAI, Evraz, and Valbruna, on the other hand, argue that correcting the administrability

30

issues is not a valid basis for remand because Commerce should not

have denied any exclusion requests on that basis to begin with.

Starting with the latter argument, resolving the administrability

issues is a compelling justification for remand.  Remand will allow the

parties the opportunity to cure the very defect that the plaintiffs allege.

*See Citizens Against Pellissippi Parkway Extension*, 375 F.3d at 416.

Indeed, if the administrability issues are resolved, any alleged error in

denying the exclusion requests on that basis will be cured.  Moreover,

for denials originally based solely on administrability issues, Commerce

could then reach the merits of whether the request meets the other

regulatory requirements for granting an exclusion.  In the event that an

administrability issue is not resolved, Commerce will have the

opportunity to explain why the issue "interferes with its ability to

consider the substance of the request."  *JSW*, 466 F. Supp. 3d at 1331.

As we explained above, allowing Commerce to reconsider its

administrability determinations in light of *JSW* is a compelling

justification for remand and is consistent with this Court's precedent.

Turning to the former argument, "{t}he courts ordinarily should

not interfere with an agency until it has completed its action, or else

31

has clearly exceeded its jurisdiction." *Nippon Steel Corp. v. United States*, 219 F.3d 1348, 1353 (Fed. Cir. 2000) (citing *McKart v. United States*, 395 185, 194 (1969)).  Thus, we do not believe that Commerce must preview to the Court how it will address administrability issues on remand.

Nonetheless, to provide clarity to the parties and the Court, Commerce provides the following.  Where requests were denied for administrability issues, the denial often occurred because the claimed HTSUS classification was inconsistent with the product specifications provided in the exclusion request.  Commerce anticipates that for most exclusion requests, the issue can generally be resolved by allowing the requesting party to amend:  (1) the claimed HTSUS classification and/or (2) minor aspects of the parties product description for the particular product at issue.  So long as the revised HTSUS classification correctly applies to the specified product at issue, or the revised product specifications are consistent with the previously provided product

specifications and the original HTSUS classification, Commerce anticipates that many administrability issues will be resolved.[4]

Finally, we address CSI and Allegheny's contention that the administrability issues should be resolved simultaneously with any substantive review on remand.  Consistent with Commerce's current practice, an administrability determination should be made prior to a consideration of the substance of an exclusion request.  Further, we respectfully submit that the order in which Commerce addresses issues on remand is not a matter necessary for this Court's resolution. Remand proceedings are administrative proceedings conducted under Commerce's authority as an Executive Branch agency upon order of the Court.  *See Fengchi Imp. & Exp. Co. v. United States*, 98 F. Supp. 3d 1309, 1315 (Ct. Int'l Trade 2015) ("The remand proceeding is an administrative proceeding.").  Commerce's proposed remand accords with its governing regulations and should be granted.

---

[4]  To the extent our remand motions did not indicate this procedure would be available to all parties who had at least one request denied, in whole or in part, on the basis of an administrability issue, *see* CSI, Allegheny Resp. at 34, we clarify now that this procedure would be available to all parties.

33

E.      The Length Of Time For The Proposed Remand Is Both
        Necessary And Appropriate

In our motions for remand, we proposed a staggered schedule by
which Commerce would reexamine the approximately 350 exclusion
requests it would reconsider on remand, if granted.  This staggered
schedule is not only reasonable in light of the amount of requests at
issue, but it is also necessary when viewed in light of the over 21,000
pending exclusion requests before Commerce, which, in general,
Commerce must decide within 106 days.

Further, as we explained in our motion, the length of time will not
prejudice the plaintiffs.  As set forth above, we agree to resolve the issue
related to the Court's power to reliquidate the liquidated entries prior to
the Court issuing a remand.  Once that issue is resolved, plaintiffs will
not be harmed by the duration of the remand.  If, on remand, Commerce
grants an exclusion, the requesting party will then be able to notify
CBP and request to apply the exclusion to specific entries, or file a
timely protest within 180 days of liquidation.  If CBP makes a
determination that a claimed exclusion applies to the merchandise
covered by a specific entry, CBP will be in a position to liquidate, or

34

approve the protest and reliquidate, without Section 232 duties, and with interest provided for by law.

We recognize the duration of the proposed remands is significant and we respectfully submit that the Court should defer to the schedule proposed by Commerce. Commerce's proposed schedule is necessary in light of Commerce's current limited resources and, as we have explained, it is non-prejudicial to the rights of the parties in this lawsuit. Finally, should the Court limit the remands to reconsideration of exclusions for which an importer has unliquidated entries against which an exclusion could be applied, such that the number of denials being remanded is significantly reduced, we are amenable to proposing a revised schedule that would take into consideration the reduced quantity of remand decisions.

## CONCLUSION

For these reasons, we respectfully request that the Court grant our motions for voluntary remand.

35

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

/s/ TARA K. HOGAN
Assistant Director

OF COUNSEL:                     /s/ STEPHEN C. TOSINI
                                /s/ MEEN GEU OH
Kimberly Hsu                    Senior Trial Counsel
Office of Chief Counsel for     /s/ JOSHUA E. KURLAND
Industry and Security           /s/ ANN C. MOTTO
Department of Commerce          /s/ KYLE S. BECKRICH
                                Trial Attorneys
                                Department of Justice
                                Civil Division
                                Commercial Litigation Branch
                                P.O. Box 480, Ben Franklin Station
                                Washington, D.C. 20044
                                Tel.:  (202) 616-9322
                                Email: Kyle.Beckrich@usdoj.gov

Dated: September 7, 2021         Attorneys for Defendant

36